**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANN DARLING,** | ) | |
| | ) | **No.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HEIGHTS FINANCE CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Now Comes Plaintiff ANN DARLING ("Plaintiff"), by and through her undersigned

counsel, and for her Complaint against Defendant HEIGHTS FINANCE CORPORATION

("Defendant" or "HEIGHTS"), states as follows:

**INTRODUCTION**

1.      Plaintiff brings claims against HEIGHTS for violations of the Truth in Lending

Act ("TILA"), 15 U.S.C. § 1601, *et seq.* and Regulation Z, 12 C.F.R. § 1026, *et seq.* (Count I),

the Illinois Consumer Installment Loan Act ("CILA"), 205 ILCS 670/1, *et seq.* and the Illinois

Administrative Code, Ill. Admin Code tit. 38, § 110 (2011), *et seq.* (Count II), and the Illinois

Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* (Count III).

**PARTIES**

2.      Plaintiff Ann Darling is a natural person and resident of Herrin, Illinois.

3.      Defendant Heights Finance Corporation is an Illinois corporation, and its

headquarters are located at 7707 N. Knoxville Ave., Suite 201, Peoria, Illinois 61614.

4.      Plaintiff's subject transactions took place at the HEIGHTS branch located at 705

North Carbon Street, Marion, IL 62959 (the "Marion location").

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this action because Plaintiff's TILA claims arise under the laws of the United States.

6.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's CILA and ICFA claims.

7.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), because Defendant resides in the Northern District of Illinois.  Venue is also proper in this district because Defendant can be found, has agents, and transacts business in this district.

## FACTS

8.      On October 5, 2020, Plaintiff telephoned HEIGHTS representative LaShonna Loveless ("Loveless") to inquire about a consumer loan.

9.      Loveless is the Branch Manager of HEIGHTS' Marion location.

10.      Loveless has extensive consumer lending experience and has been employed by HEIGHTS since about approximately August 15, 2018.

11.      Loveless invited Plaintiff to the Marion location to complete a loan application.

12.      Plaintiff went to the Marion location and met with Loveless to apply.

13.      Loveless directed Plaintiff to provide contact information of friends and family for use as references.  Loveless stated HEIGHTS only communicates with references to locate borrowers when its contact information on file is no longer valid.

14.      Loveless stated HEIGHTS would provide Plaintiff with a $2,000.00 loan for a monthly payment of $125.00.

15.      Loveless stated HEIGHTS "does things electronically" and retrieved a handheld electronic device ("tablet") to consummate the transaction.

16.     Loveless presented the tablet to Plaintiff and repeatedly instructed Plaintiff to touch her name on the display screen to indicate Plaintiff's signature as it coincided with Loveless' discussion of the loan.

17.     Loveless maintained control of the tablet; and the manner the tablet was held by Loveless obscured contract terms beneath the signing block, or did not display contract terms, or otherwise concealed contract terms.

18.     Loveless did not inform Plaintiff of essential loan terms, other than the $2,000.00 loan amount and the $125.00 monthly repayment schedule.

19.     In addition to finance charges, HEIGHTS charged Plaintiff $191.23 for credit life and credit disability insurance.

20.     Plaintiff believed such insurance was required because Loveless stated HEIGHTS "always adds insurance" and adding insurance is part of "our normal process."

21.     Loveless did not state the cost of the credit insurance and Plaintiff understood the cost of such insurance, if any, was negligible.

22.     At the conclusion of the transaction, Loveless gave Plaintiff a check for $2,006.60 and unexecuted contract documents.  See *Unexecuted October 5, 2020, Consumer Credit Contract and Accompanying Documents,* attached hereto as Group Exhibit A.

23.     The unexecuted contract states, *inter alia*, an APR of 34.95%, a finance charge of $927.17, an amount financed of $2,197.83, a total of payments of $3,125.00, and $191.23 in charges for credit insurance.  Ex. A.

24.     Plaintiff's understanding of the transaction was based on the interaction with Loveless.  Plaintiff did not read the documents provided after the transaction and only became aware of the specific terms of the unexecuted contract after consulting with legal counsel.

**The Consolidation Loan**

25.      On October 7, 2020, Plaintiff returned to the Marion location to inquire about an additional consumer loan to meet her needs.

26.      Loveless stated HEIGHTS would only advance additional loan money if Plaintiff provided her 2016 Honda Accord as collateral.

27.      Plaintiff's 2016 Honda Accord was then security for a loan with Murphy Wall State Bank, with an APR of 5.73% and an unpaid loan balance of $7,021.67.

28.      Loveless offered to refinance the vehicle, lend Plaintiff an additional $4,700.00, and consolidate all loans for a monthly payment of $458.00.

29.      Loveless stated Plaintiff "would be better off transferring the car" and refinancing was a "better deal" because Plaintiff would have one payment.

30.      Loveless did not indicate and Plaintiff did not understand that refinancing the vehicle with HEIGHTS would result in a 20.05% APR for the unpaid loan balance.

31.      Like the prior engagement, Loveless retrieved a tablet and repeatedly instructed Plaintiff to touch her name on the tablet's display screen to indicate Plaintiff's signature as it coincided with Loveless' discussion of the loan.

32.      Loveless maintained control of the tablet; and the manner the tablet was held by Loveless obscured contract terms beneath the signing block, or did not display contract terms, or otherwise concealed contract terms.

33.      In addition to finance charges, HEIGHTS charged Plaintiff $3,476.22 for credit life, credit disability, and credit involuntary unemployment insurance.

34.      Loveless did not offer and Plaintiff did not accept the credit insurance products.

35.     At the conclusion of the transaction, Loveless gave Plaintiff a check for $4,713.84 and unexecuted contract documents.  See *Unexecuted October 7, 2020 Consumer Credit Contract and Accompanying Documents*, attached hereto as Group Exhibit B.

36.     The unexecuted contract states, *inter alia*, a payoff for the October 5th loan, a payoff for the Murphy Wall State Bank loan, an APR of 20.05%, a finance charge of $10,214.36, an amount financed of $17,265.64, and $3,476.22 in charges for credit insurance.  Ex. B.

37.     Plaintiff's understanding of the transaction was based on the interaction with Loveless.  Plaintiff did not read the documents provided after the transaction and only became aware of the specific terms of the unexecuted contract after consulting with legal counsel.

### Post-Transaction Collection Communications

38.     In the weeks following the transactions, Plaintiff struggled to make payments on the consolidated loan because of unexpected personal hardship.

39.     HEIGHTS employed a collection strategy for the loan that included frequent communications with Plaintiff's friends and family.

40.     The strategy departed from Loveless' claim that HEIGHTS only communicates with references to locate borrowers when its contact information is no longer valid.

41.     Plaintiff's contact information was valid.

42.     HEIGHTS knew Plaintiff's contact information was valid because the parties communicated regularly.

43.     Plaintiff works full-time and often does not take calls during business hours because such calls interfere with her employment.

44.    On November 18, 2020, Loveless threatened to contact Plaintiff's friends and family by stating, "…when you don't answer your phone, we are supposed to call references…." See *November 18, 2020 E-Mail Correspondence*, attached hereto as Exhibit C.

45.    On November 18, 2020, Plaintiff told HEIGHTS, in part, "…I'm so sorry… none of my contact information has changed. Please do not contact my references.  My next payday is 11/27/2020 and I will try to make a payment…." *Id*.

46.    Relationships with family and friends are important to Plaintiff's well-being. Plaintiff feared HEIGHTS would harm her relationships by divulging information about her private financial affairs or cast her in a bad light.

47.    HEIGHTS began contacting Plaintiff's friends and family despite Plaintiff's November 18 request.

48.    On December 9, 2020, Plaintiff told HEIGHTS, in part, "…this is the second time I have notified you that you have my current and correct contact information.  Please stop contacting my friends and family as it is causing me problems.  I am trying to figure out what to do. Thank you for your patience…."  See *December 9, 2020 E-Mail Correspondence*, attached hereto as Exhibit D.

49.    On December 9, 2020, Loveless responded to Plaintiff's request by stating, "…we may have correct information, but we do not have a payment or communication with you in regard to a payment…." *Id*.

50.    HEIGHTS continued to contact Plaintiff's friends and family despite Plaintiff's December 9 request.

51.    On January 6, 2021, Plaintiff told HEIGHTS again, in part, "…I have sent you numerous emails and requested that you quit calling my references.  It is now causing a lot of

problems and I do not appreciate you ignoring my requests…." See *January 6, 2021 E-Mail*

*Correspondence*, attached hereto as Exhibit E.

52.     On January 6, 2021, Loveless responded to Plaintiff's request by stating, "…we

will continue collections on the account until the account is paid…." *Id*.

53.     HEIGHTS continued to contact Plaintiff's friends and family despite Plaintiff's

January 6 request.

## COUNT I

### Violations of the Truth in Lending Act and Regulation Z
### (15 U.S.C. § 1601, *et seq*., and 12 C.F.R. § 1026, *et seq*.)

54.     Plaintiff repeats and realleges paragraphs 1-53, as if fully set forth herein.

55.     Plaintiff is a "consumer," as defined by TILA, 15 U.S.C. § 1602(i).

56.     HEIGHTS is a "creditor," as defined by TILA, 15 U.S.C. § 1602(g).

57.     HEIGHTS violated Regulation Z at 12 C.F.R. § 1026.17(b) in a manner

including, but not limited to the following:

      a.     Defendant failed to make TILA disclosures before consummation of the

      October 5 transaction; and

      b.     Defendant failed to make TILA disclosures before consummation of the

      October 7 transaction.

58.     HEIGHTS violated Regulation Z at 12 C.F.R. § 1026.17(a)(1) in a manner

including, but not limited to the following:

      a.     Defendant failed to make TILA disclosures clearly and conspicuously in

      writing on the tablet during the October 5 transaction, if it made disclosures at all,

      because of design, implementation by HEIGHTS, and inability of Plaintiff to

      freely take possession of the tablet to review before signing; and

b.  Defendant failed to make TILA disclosures clearly and conspicuously in writing on the tablet during the October 7 transaction, if it made disclosures at all, because of design, implementation by HEIGHTS, and inability of Plaintiff to freely take possession of the tablet to review before signing.

59. HEIGHTS violated 12 C.F.R. § 1026.17(a)(1) in a manner including, but not limited to the following:

a.  Defendant's dual use of tablet and unexecuted contract to make TILA disclosures, if at all, and consummate the October 5 transaction obscured the relationship of terms to each other; and

b.  Defendant's dual use of tablet and unexecuted contract to make TILA disclosures, if at all, and consummate the October 7 transaction obscured the relationship of terms to each other.

60. HEIGHTS' conduct deprived Plaintiff of timely information about annual percentage rate, finance charge, amount financed, total of payments, and other essential terms that bear on the cost of credit. HEIGHTS' failure harmed Plaintiff's ability to make informed credit decisions and object to HEIGHTS' overcharges for credit insurance or evaluate its offer to refinance the Honda Accord at a higher APR.

61. As the direct and proximate result of HEIGHTS' conduct, Plaintiff suffered economic harm by accruing $191.23 and $3,476.22 in undisclosed principal and finance charges for credit insurance products, and undisclosed finance charges for refinancing the 2016 Honda Accord at 20.05% APR instead of the lower 5.73% APR.

62.     As the direct and proximate result of HEIGHTS' conduct, Plaintiff paid hundreds of dollars in legal fees, used limited cellular data to transmit documents to counsel, and took unpaid time off from work to discuss the subject transactions with counsel.

63.     Additionally, as the direct and proximate result of HEIGHTS'conduct, Plaintiff suffered emotional distress from her dealings with Defendant, including distress from collection calls, hostile written correspondence, disruptive contacts with friends and family, and threat of legal action.  Plaintiff feels cheated, is embarrassed, suffers bouts of uncontrollable crying, and suffers severe weight loss and other medical problems related to stress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ANN DARLING prays for an Order as follows:

A.      Entering judgment in favor of Plaintiff and against Defendant HEIGHTS;

B.      Awarding Plaintiff actual damages, statutory damages, attorneys' fees and costs, and all other relief as allowed or required by law; and

C.      Granting additional relief this Court deems reasonable and just.

## COUNT II

### Violations of the Illinois Consumer Installment Loan Act and the Illinois Administrative Code
### (205 ILCS 670/1, *et seq*. and Ill. Admin Code tit. 38, § 110 (2011), *et seq.*)

64.     Plaintiff repeats and realleges paragraphs 1-53, as if fully set forth herein.

65.     Defendant is an Illinois entity, and relevant decision-making came from Illinois.

66.     Defendant is a "licensee," as defined by Ill. Admin Code tit. 38, § 110.1 (2011).

67.     Plaintiff is an "obligor," as defined by Ill. Admin Code tit. 38, § 110.1 (2011).

68.     HEIGHTS violated the CILA at 205 ILCS 670/16 in a manner including, but not limited to the following:

     a.     Defendant failed to make credit disclosures before consummation of the

October 5 transaction;

     b.     Defendant failed to make credit disclosures before consummation of the

October 7 transaction;

     c.     Defendant's dual use of tablet and unexecuted contract to consummate the

October 5 transaction and make disclosures, if at all, was not clear, conspicuous,

and lacked meaningful sequence because of timing, the tablet's design,

implementation, and freedom of Plaintiff to review the tablet before signing; and

     d.     Defendant's dual use of tablet and unexecuted contract to consummate the

October 7 transaction and make disclosures, if at all, was not clear, conspicuous,

and lacked meaningful sequence because of timing, the tablet's design,

implementation, and freedom of Plaintiff to review the tablet before signing.

69.     HEIGHTS violated the Illinois Administrative Code at Ill. Admin Code tit. 38, §

110.170 (2011) in a manner including, but not limited to the following:

     a.     Defendant failed to clearly explain the benefits and limitations of

insurance products connected to the October 5 loan; and

     b.     Defendant failed to obtain consent and avoided discussion of the benefits

and limitations of insurance products connected to the October 7 loan.

70.     HEIGHTS violated the Illinois Administrative Code at Ill. Admin Code tit. 38, §

110.220 (2011) in a manner including, but not limited to the following:

     a.     Defendant threatened to contact Plaintiff's family and friends without a

permissible purpose and with knowledge of its harmful effect; and

b.      Defendant contacted Plaintiff's family and friends without a permissible purpose and with knowledge of its harmful effect.

71.      HEIGHTS' conduct deprived Plaintiff of timely information about annual percentage rate, finance charge, amount financed, total of payments, and other essential terms that bear on the cost of credit.  HEIGHTS' failure harmed Plaintiff's ability to make informed credit decisions and object to HEIGHTS' overcharges for credit insurance or evaluate its offer to refinance the Honda Accord at a higher APR.

72.      HEIGHTS' conduct deprived Plaintiff of the ability to withhold consent and evaluate insurance products HEIGHTS added to the loans.

73.      HEIGHTS' conduct disrupted relationships with Plaintiff's friends and family. HEIGHTS' contacts with references were unreasonable, oppressive, and invited digression into private financial affairs as to constitute harassment.

74.      As the direct and proximate result of HEIGHTS' conduct, Plaintiff suffered economic harm by accruing $191.23 and $3,476.22 in undisclosed principal and finance charges for credit insurance products, and undisclosed finance charges for refinancing the 2016 Honda Accord at 20.05% APR instead of the lower 5.73% APR.

75.      As the direct and proximate result of HEIGHTS' conduct, Plaintiff suffered extreme anxiety about relationships with friends and family.  These relationships are important and instrumental to Plaintiff's well-being.

76.      As the direct and proximate result of HEIGHTS' conduct, Plaintiff paid hundreds of dollars in legal fees, used limited cellular data to transmit documents to counsel, and took unpaid time off from work to discuss the loans with counsel.

77.     Additionally, as the direct and proximate result of HEIGHTS' conduct, Plaintiff suffered emotional distress from her dealings with Defendant, including distress from collection calls, hostile written correspondence, disruptive contacts with friends and family, and threat of legal action.  Plaintiff feels cheated, is embarrassed, suffers bouts of uncontrollable crying, and suffers severe weight loss and other medical problems related to stress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ANN DARLING prays for an Order as follows:

A.     Entering judgment in favor of Plaintiff and against Defendant HEIGHTS; an

B.     Awarding Plaintiff actual damages, statutory damages, attorneys' fees and costs, and all other relief as allowed or required by law; and

C.     Granting additional relief this Court deems reasonable and just.

## COUNT III

**Violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act**
**(815 ILCS 505/1, *et seq.*)**

78.     Plaintiff repeats and realleges paragraphs 1-53, as if fully set forth herein.

79.     Plaintiff is a "consumer," as that term is defined by the ICFA.

80.     Defendant's alleged conduct occurred during the course of trade or commerce.

81.     HEIGHTS violated the ICFA at 815 ILCS 505/2 in a manner including, but not limited to the following:

   a.     Defendant failed to provide Plaintiff with required disclosures until after consummation of the October 5 transaction and intended Plaintiff to rely on the omission for its gain; an

12

b.      Defendant failed to provide Plaintiff with required disclosures until after consummation of the October 7 transaction and intended Plaintiff to rely on the omission for its gain;

c.      Defendant failed to clearly explain the benefits, limitations, and cost of insurance products connected to the October 5 transaction and intended Plaintiff to rely on the omission for its gain;

d.      Defendant concealed charges for credit life, credit disability, and credit involuntary unemployment insurance products in the October 7 loan and intended Plaintiff to rely on the concealment for its gain;

e.      Defendant misrepresented its motive for references and intended Plaintiff to rely on the misrepresentation for its gain.

82.     HEIGHTS' conduct deprived Plaintiff of material facts about credit insurance, loan terms and costs, and HEIGHTS' motives for obtaining the contact information of friends and family.  HEIGHTS' conduct limited the information available to Plaintiff to make informed credit decisions and protect her relationships with friends and family.

83.     As the direct and proximate result of HEIGHTS' conduct, Plaintiff suffered economic harm by accruing $191.23 and $3,476.22 in undisclosed principal and finance charges for credit insurance products, and undisclosed finance charges for refinancing the 2016 Honda Accord at 20.05% APR instead of the lower 5.73% APR.

84.     As the direct and proximate result of HEIGHTS' conduct, Plaintiff suffered extreme anxiety about relationships with friends and family.  These relationships are important and instrumental to Plaintiff's well-being.

85.    As the direct and proximate result of HEIGHTS' conduct, Plaintiff paid hundreds of dollars in legal fees, used limited cellular data to transmit documents to counsel, and took unpaid time off from work to discuss the subject transactions with counsel.

86.    Additionally, as the direct and proximate result of HEIGHTS' conduct, Plaintiff suffered emotional distress from her dealings with Defendant, including distress from collection calls, hostile written correspondence, disruptive contacts with friends and family, and threat of legal action.  Plaintiff feels cheated, is embarrassed, suffers bouts of uncontrollable crying, and suffers severe weight loss and other medical problems related to stress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ANN DARLING prays for an Order as follows:

A.    Entering judgment in favor of Plaintiff and against Defendant HEIGHTS;

B.    Awarding Plaintiff actual damages, punitive damages, attorneys' fees and costs, and all other relief as allowed or required by law; and

C.    Granting additional relief this Court deems reasonable and just.

Respectfully submitted,

Werner Gruber
88 Cambridge Rd.
Grosse Pointe Farms, MI 48236
Phone: (708) 420-2100
Fax: (312) 268-7064
Email: werner@gruberlegal.com

Marc Dann
DannLaw
2728 Euclid Suite 300
Cleveland, OH 44115
Phone: (216) 452-1026
Email: mdann@dannlaw.com

ANN DARLING

By and through her counsel,

*s/ Werner Gruber*
Werner Gruber, *One of Plaintiff's Attorneys*

14